On today's docket, we will begin with agenda number 14, number 128612, Village of Kirkland v. Kirkland Properties Holdings Co., LLC. Counsel for the Appellant, are you prepared to speak? Good morning. May it please the Court, Counsel. My name is Colin William Anderson of the Law Firm of Anderson & Uden, P.C. I am Counsel for the Defendant's Appellants in this matter, Kirkland Property Holdings Co., LLC, 1 and Kirkland Property Holdings Co., LLC, number 2. If it is okay with your Honors, I will refer to these entities separately as Kirkland 1 and Kirkland 2 and collectively as the Defendants. I will refer to the Plaintiff Appellant, Village of Kirkland, as the Village of Kirkland. There are three issues being presented to this Honorable Court. First, whether the Village stated a cause of action against the Defendants for breach of a May 5, 2003, annexation agreement, which was drafted by the Village and entered into with the owners of approximately 100 acres of real property located adjacent to the Village's boundary. The annexation agreement intended to annex this property into the Village's boundaries in exchange for the original owners of the agreement to develop the property into a residential subdivision. This issue turns on whether the original owners' contractual obligations to develop the whole of the property can be enforced against later owners of smaller portions of the property and also whether the original owners' obligations can be enforced against any subsequent owner or only certain classes of owners. The second issue is whether the trial court abused its discretion in awarding the Defendants their reasonable attorney's fees pursuant to the terms of the annexation agreement after the trial court dismissed the Village's third amended complaint with prejudice and declared the Defendants the prevailing party in a dispute over the annexation agreement's terms. The third and final issue is whether the Village's notice of appeals were sufficient to bestow the Second District Appellate Court with jurisdiction when they failed to specify the orders being appealed from or specifically requesting certain relief that was being sought. Given the weight of the first issue, I will focus the bulk of my time today addressing that issue, but obviously I'm happy to address each issue and answer any of your Honor's questions. It is the Defendant's position that no, the Village cannot state a cause of action against the Defendants for the breach of the annexation agreement under a theory of successor liability because the Defendants are not the successors of this subject property or the whole of the property as that term is defined in the annexation agreement itself. And also because the annexation agreement is silent on whether subsequent owners of only a part of the subject property are considered successors. The agreement also fails to make any distinction between any different classes of subsequent owners. The trial court therefore properly ruled that the Defendants cannot be considered successors and the annexation agreement cannot be enforced against them. At the heart of this issue is a question of fundamental fairness. Put simply, what kind of advance notice is a potential land buyer entitled to when purchasing smaller parcels within a larger tract of land that is subject to an annexation agreement that they could be financially liable for and contractually responsible for completing millions of dollars of improvements, not just for the parcel they are purchasing, but the entire tract of the annexed land? In this regard, it is important to remember that there is no single class of buyers. As in this case, they necessarily range from a single family home buyer to potential developers to small-time real estate investors. The Illinois Municipal Code provides that the annexation agreement can be binding on successor owners of the land being annexed and that is the subject of the agreement. But the Municipal Code does not address when an annexation agreement is binding on subsequent owners who own something less than the whole of the land that was annexed. And when there the Municipal Code also does not define any certain classes of subsequent owners, whether it be single family homeowners, single lot owners, or potential developers, real estate investors, and the like. There is no such distinction in the Municipal Code. Counsel, what's the purpose of an annexation agreement? The annexation agreement. To develop the land, right? Absolutely, Your Honor. And the purpose of the annexation agreement is for the benefit of both the municipality and the owner of the land to develop the land. And that purpose, the true intent, then turns not on the Municipal Code. The Municipal Code permits it, but it's the language of the annexation agreement that truly defines what the party's intent is. The Municipal Code simply permits it. But the agreement, it neither precludes nor mandates basically, you know, who is going to be the successor. It just doesn't address it as far as if it's just a portion of all of the land. Is that correct? That's correct, Your Honor. And so that's where the intent to determine who can be considered a successor landowner of that whole or any portion of it truly falls on the drafters of the annexation agreement. That's who the burden, the impetus should rest with. Counsel, was the village even a party to this agreement? Yes, it was. It was not only a party to the agreement, but it was the sole drafter of the agreement. This agreement was not drafted between the village and the original landowners. This agreement was drafted by the village. And as such, any ambiguity therein must be construed against the village for that very reason. And what about KPHC? Were they parties to the agreement? Right. No, not at all. And there's no contractual privity. Was it considered? Does that impact our analysis? I believe it impacts your analysis only after, as I implore you to do, you find that the Kirkland I and Kirkland II cannot be considered successor landowners for the reasons I will state and the reasons set forth in the brief. Then the analysis turns on whether there's any contractual privity between the original contracting parties, the original landowners or developers, however you want to phrase that, and downstream, Kirkland I and Kirkland II, who, again, were not subsequent owners or even the second owners, way downstream. And there is no contractual privity whereby they contractually assumed any of the original landowners' responsibilities for covenants under this annexation agreement. So the Municipal Code fails to address these issues, that is, what agreement can be binding on subsequent owners of something less than the whole of the land and whether there is certain classes of subsequent owners who may be held liable and those who do not. The Municipal Code fails to address these issues, and it does so for good reason. It would be an impossible task for the legislator to craft statutory language that is able to anticipate the wide range of issues and complex variables that the municipalities and the landowners encounter when negotiating and crafting annexation agreements. The courts are also ill-equipped to make these distinctions and determinations after the fact, unless the intent to bind smaller portion parcel owners or specific classes of owners is apparent from the express language in the annexation agreement itself. Council, so that brings me to the question of what is the land that's subject to this agreement? The land that's subject to this agreement is defined in the agreement very clearly as the whole of the land. It is, with a legal description, attached as a schedule to the annexation agreement, included as an exhibit to the village's complaint. It defines the land as the whole of the land, the entire parcel of approximately 100 acres. And so just a portion of the land, a lot, is not part of the agreement, is your position? It is my position that it is not capable of imposing successor liability on the owners of those smaller portions because it is not defined to be the whole of the land or any parcel smaller portion thereof. And this is the distinction made in several appellate court cases that I'll cite momentarily where the annexation agreement did broaden the definition of the subject land. And that language is entirely absent from our annexation agreement at issue today. Council, what was the underlying reason? Now, Justice Overstreet asked you this, and I'm not sure if I understood your answer. What was the underlying purpose of the annexation agreement? Yes, Your Honor, the underlying purpose of the annexation agreement was for the consideration being provided to the original landowner, the developer, if you want to call them that, was for this village of Kirkland to annex the property, which was adjacent to the village boundaries, into the village and thereafter provide them with utility services such as water, fire services, things of that nature. The consideration being provided to the village was having a new tax base and having what was once vacant farmland be developed into a residential neighborhood, which would obviously increase the village's tax base. So the developer, under that agreement, the developer would be required to do certain things that go along with developing land like build sewers and sewer drains and so on, right? Correct. So if there is, if less than, under your argument, unless the entire parcel is purchased, then the rights of the original purchaser doesn't run with the land. Is that what you're saying? Yes, because the language is silent on that issue. But this is another important distinction in this particular annexation agreement, is that the intent, as is clear from the terms of this agreement itself, drafted by the village, the intent of the parties was never to have subsequent owners, whether they be subsequent developers, subsequent homeowners or any class of property owners, the intent was never to have those subsequent owners be responsible for completing these improvements. The clear intent of this agreement, made clear from the unambiguous language, was that the original landowner, the original developer, was the one that was supposed to finish these improvements and do so within a specified timeframe. If the developer didn't do that for any reason, whether they went bankrupt, whether they sold the property, any reason whatsoever, if the developments were not improved within that specified timeframe, then the village had an irrevocable letter of credit in the amount of the full amount of all the developments. So if in this case the developer went bankrupt, they could turn to the bank and exercise their rights under the letter of credit and get every last dollar needed to complete the improvements. And so that's why in this particular annexation agreement, there was no intent for subsequent owners of any class of any size to be responsible for these improvements. The money was always there if the original developer, the original landowner, failed to complete the improvements. Did the agreement say that? Yes. The original agreement includes letter of credit that... No, but the annexation agreement is completely silent on that issue. The only language in this particular agreement that would even imply a subsequent owner could be held responsible for this is a standard contractual phrase of this agreement shall be binding on any assigns or successors, executors, heirs, that again fails to define what those be. So it is our position, the defendant's position in this case, that if that binds anybody, it can only bind a subsequent owner, a successor to the whole of the property, somebody that stepped into the complete shoes of the original landowner. So as I was saying, the courts are ill-equipped to make these distinctions and determinations after the fact unless the intent to bind smaller owners and specific classes is apparent from the beginning. If the intent is not clear from the express language in the annexation agreement itself, if the intent is not clear from the annexation agreement itself, any judicially imposed distinction would inevitably be wholly arbitrary. Instead, the people who are in the best position to address when an annexation agreement is binding on subsequent owners of individuals who own something less than the whole of the land annexed, are the drafters of the agreement itself. The drafters of the agreement are the people who know the land, know what they want and expect of the property being annexed, and who, because they are the ones planning the development of the property, are best situated to anticipate the growth and eventual ownership outcome of the property as a whole, as well as any smaller parcels thereof. These individuals, the drafters of the annexation agreement, are therefore the ones who can and should clearly define what subsequent owners will be contractually obligated under the annexation agreement and under what circumstances. By placing the impetus and duty on the drafters, it will ensure not only that the annexed property is developed as the municipalities and original landowners planned, but also that all subsequent purchasers will have sufficient advance notice of their specific rights and obligations under the annexation agreement and the scope thereof. The statute itself, though, 65 ILCS 5-11-15.1-4, say, shall be binding upon the successor owners of record of the land, which is the subject of the annexation agreement? Yes, but this then turns on what is the definition of the land. And the municipal code cannot and does not make that, define that definition. And that's where the people who are best positioned to define what they mean by the land, that it shall be binding on successors, is the drafters. They are the ones that can craft detailed language if it's something more than the whole of the land. And in this agreement, the only definition of the land is the whole of the land. It says nothing of smaller purchasers. It says nothing of class distinctions between certain purchasers and others. And so, as I was saying, by placing this impetus and this duty on the drafters, it will ensure not only the annexed property is developed as they planned, but that subsequent purchasers will have notice of what's required of them and expected. And this is the principle that was followed by the Illinois appellate courts in the cases City of Elgin v. Arch Insurance Company, United City of Yorkville v. Fidelity and Deposit Company of Maryland, and Doyle v. Village of Tinley Park. Each of these, this principle that was applied in each of these cases has proven a workable framework that ensures sufficient advance notice to all subsequent purchasers of annexed property and, from the municipality's point of view, accountability to those subsequent owners so designated in the annexation agreements. And it is this principle that I respectfully submit this honorable court should codify as the rule of law in Illinois and which should be applied to the facts of this case. Counsel, if we consider Doyle as being limited to the facts of that case, do you lose? No, I think the court in Doyle did an interesting thing where the facts of that case were unique and different, but the rule of law established is on point in this case. How so? In the sense that they anticipated this absurd result where if an annexation agreement is silent on what types, what different classes of owners can be held liable, then it leads to the absurd result of Mr. Smith purchasing a single family home and suddenly the municipality knocking on the door and saying, sir, you are responsible for a million dollars worth of improvements that the original developer did not complete. There was nothing in this annexation agreement before that would give Mr. Smith any such advance notice, just like it didn't give the defendants in this case any such advance notice. They were not purchasing the whole of the property. They were only purchasing a smaller portion of it. And as a result, that is why the Doyle court noted that they stepped aside from the facts of the specific facts of that case to address the larger issue of who should be the one responsible for putting subsequent owners on notice of what their rights and obligations are going to be. And unless that language is included in the annexation agreement, it's going to lead to the absurd result that Mr. Smith and Mrs. Smith are suddenly on the hook for millions of dollars worth of improvements. And that's the absurd result that the Doyle court raised. And it's also, Doyle doesn't stand alone. Although the city, United City of Yorkville and City of Elgin cases ultimately found that the subsequent purchasers could be held liable, they followed the same principle, which is in those annexation agreements, the drafters made clear who could and could not be responsible, not just people that purchased the whole of the property, any subsequent grantee. And in fact, I believe it's City of Elgin where the annexation agreement at that said any subsequent grantee except single family homeowners. This is the distinction that the village is trying to make in this case that simply doesn't exist when they call the defendants developers. Another quick question. Since there, as you say, the agreement is silent on this point. Are there any public policy implications for interpreting the agreement the way you are urging us to do? Predictability. Predictability and uniformity. To have a workable framework where subsequent purchasers of property have advanced notice of what can be required of them when they are purchasing property. So Mr. Smith can say when he's sitting at the closing table going over the title commitment that an annexation agreement is of record. But don't worry. We reviewed that annexation agreement and it excludes you, a single family homeowner, from being responsible for these improvements. It's going to fall on somebody else, a developer, somebody that purchases more than one lot. That's the key. And that's the key that's missing in this annexation agreement is it doesn't make any subsequent distinctions for anybody that doesn't purchase less than the property as it's defined in the agreement, which again is the whole of the property. And this is the problem with the village's case here is that they want to say, well, of course it means anybody. It means any subsequent purchaser. But they understand the policy implications of that, that then the individual homeowners are also going to be responsible for completing these improvements. And they say, but wait. There's a difference here between a single family homeowner and somebody that purchases more than one lot, such as the defendants in this case. The problem with that argument is there is no such language in this annexation agreement that makes any such distinction like that. And so for that reason, I think the trial court properly dismissed this complaint with prejudice. And I see that my time is up. Thank you, Your Honor. May it please the court. My name is Jennifer Gibson from the law firm of Zukowski Rogers, Flutter, McArdle, and I represent the village of Kirkland. Kirkland is a small village located in DeKalb County, Illinois, with a population of approximately 1,600 people. Annexation agreements play an important role in the growth and development of municipalities such as Kirkland. They're a mutually beneficial contract between the village and the owner of the property, typically a developer, by which the village agrees to annex into its certain property and zone it in a specific way. Importantly, especially for a village the size of Kirkland, they often provide for the construction of vital infrastructure for the newly annexed or to be annexed property. Infrastructure such as water, sewers, roads, parks. They lay out how these will be constructed and who will be responsible for constructing the infrastructure. Without an annexation agreement that lays out who will be responsible for the infrastructure, our municipalities, and especially ones the size of Kirkland, would struggle to bring these vital services to the new residents who are a result of the annexation. The policy behind these annexation agreements is important. It's very strong. To paraphrase the Orland Park Court, annexation agreements encourage the expansion of urban areas in a uniform, economic, efficient, and fair manner by making provisions for the necessary municipal public improvements. The annexation in this case provided that the land over, the land over, land owner, which at the time of execution of the annexation agreement was the Rood Trust, would be responsible for the construction of the roads. To secure the completion of the roads, the land owner was required to deposit with the village an irrevocable letter of credit. We're here today because the subsequent land owners of 34 lots in the annexation parcel failed to post the letter of credit to secure the completion of the roads. I want to start with the statute governing annexation, section 11, 15.14. So important are these annexation agreements to the continued growth and development of our towns that our legislature enacted this provision that provides any annexation agreement executed pursuant to this division, 15.1, shall be binding on the successor owners of the record land which is the subject of the agreement and upon successor municipal authorities. Looking at the plain language of this provision, this provision specifically states that a properly executed annexation agreement is binding on successor owners of the land subject to the annexation agreement. And I want to emphasize the term owners. That term appears in the statute in the plural, and the plurality of the term indicates that the legislature intended or anticipated that there might be more than one record owner. And this makes... Let me ask you, like I asked the closing counsel, what is the land that is spoken about in the annexation agreement? The land that's spoken about in the annexation agreement is defined in Exhibit B to the annexation agreement as the entire parcel. But the smaller parcels are part of the larger parcel, and the smaller parcels are part of the larger parcel. It's part of it. Is it your position that the statute becomes a part of the annexation agreement? I think it is part of the annexation agreement because it specifically incorporates the statute and says that it's enacted pursuant to statute. But I don't think there needs to be any specific language, because it's the law. As a matter of law, the statute is part of the annexation agreement, and it doesn't need to be repeated into that annexation agreement. Counsel? As I asked your opponent, what is the underlying purpose of the annexation agreement in this case? In this case, it's to regulate how this newly annexed property is going to be developed. Some of the more important provisions is it does provide for the infrastructure. Importantly, the infrastructure is required to be paid for and constructed by the developer. The village, until it's completed, is not required to accept it. Counsel, who prepared the agreement? I don't know that the record entirely bears that out. I can surmise that the village took the lead in the drafting, but I don't think there's any evidence in the record that KPHC or the defendants weren't represented or didn't have the opportunity to have input into the agreement. I'm looking at the Elgin case and the fact that in that case, the agreement had language that said it was binding on any successors and the signs of all or any part of the property. The village chose not to include language along those lines, right? That's correct. The agreement is silent. It doesn't contain those words or any portion thereof. In looking at the Elgin case, nowhere did that court hold or even place emphasis on those specific terms. In the recitals, when reciting the facts, you can tell that that specific annexation agreement had that language, but in making its holding or its holding, it didn't have that much import, and nor do I think had the annexation agreement in this case contained those language, I don't think we'd be here possibly today, but I don't think that's necessarily fatal because of the statute. If we interpret the statute the way the defendants are urging, I think you come to an illogical result. If we do that, it would create a loophole in the statute. Counsel, let me ask you the same question I asked your opponent. What are the public, are there any public policy implications for interpreting the statute in the manner urged by your opponent? I don't see any. Counsel mentioned predictability, but I don't think this was a surprise here. I think it was very predictable. Number one, due to the statute. Number two, due to the fact the annexation agreement was recorded. Number three, the warranty deed that conveyed the property to the defendants, specifically to the defendants, was not recorded. It specifically said that they were taking it subject to this particular annexation agreement executed in 2003. So this was very predictable. When they made the purchase, the defendants well knew what they were, the obligations that they were signing on for. Counsel, was the letter of credit submitted by the original developers, is that prorated? It only covered their period of ownership? Correct. We are only seeking prorata in the amount of lots that the defendants own. We're not seeking that they post a letter of credit in the amount of the entire cost of the uncompleted roads, just their prorata share. So the original letter of credit that was irrevocable, that was not part of the obligate, I mean they didn't even assume this, it was not part of the due diligence of the second developer to come in to assume that letter of credit? I'm not sure I know how to answer that. But I know the second developer, they purchased somewhat smaller. They didn't purchase the whole either. I think they purchased 41 of the lots and then ended up conveying to the defendants now 34 of the lots. Counsel, we're talking about developers right now in this case. Correct. But I believe the opposing counsel alluded to the fact that if we rule in your favor that somehow this might harm a future homeowner instead of the developer. So I disagree with that. I think there are a lot of, there's clues when you look at the annexation agreement in this case that we're not trying to treat a residential homeowner as a developer. I'm going to point to Section 6. You're going to see in Section 6 of the annexation agreement, you're going to see the term owner, not landowner where the developer was described as, but owner for the first time. And in that paragraph, it states that the owner agrees to comply with all ordinances. So to me, you've got a different term there, evidencing treating a regular owner different than a developer. Another section I think that's important to look at is Section 10 of the annexation agreement. It requires that property owners have to maintain the light post. There's no street lights that were being installed in this neighborhood. There were light posts at the front of each lot. And it required that property owners, not the landowners, maintain the light posts and keep each of those light posts lit. So I think that there is evidence that this agreement treats a regular residential owner very differently from a developer. Section 5 lays out how the property is going to be developed in stages. And I think from there, you can contemplate that this is going to be developed in stages and thereafter could be conveyed to different people to develop the different stages, which as was the case here. When I look at the Doyle case, I look at the Doyle case as an example. I look at the Doyle case as an example. I look at the Doyle case as an example. In the Doyle case, it was a very irregular fact pattern, where the owner, and it was very unique to say the least, the owner in that case was trying to step into the shoes of the developer to sue the developer. And the facts in that case are so unique, I think, and that argument didn't make sense. So Doyle should be just limited to the facts of that case, but I think that if the court reached the correct result, the Doyles didn't have standing to step in the shoes of the developer to sue the developer. They'd have been suing themselves. And I think they were correct to be concerned about a residential homeowner being required to complete municipal infrastructure. When a homeowner goes to buy their home that's already completed, they don't typically have to wait until the next day to worry about financing and putting in the roads or the storm sewers. But it was wrong to imply that a successor owner of only a portion of the annexed property was not a successor to the annexation agreement, which is why I believe the second district case, Yorkville, was the more well-reasoned case. The second district criticized Doyle and Yorkville for not placing more emphasis or distinguish between a developer and a residential lot owner, because it is fair to hold successor developers obligated to the duties of an annexation agreement because of the policy that favors completion of this municipal infrastructure. The Yorkville court noted that it's not uncommon for property of an annexation agreement to be sold and divided to different owners or developers. And this policy would be frustrated by reading the statute to create a loophole. If what benefit would Section 15.14 be if a developer could sell the property to a developer who was not a developer, you could sell the land to two different developers to escape the responsibility to complete the infrastructure. You could sell one lot to one developer and all the remaining lots to another, and then the infrastructure would never have to be completed. And that's your argument based on the language in this agreement? Correct. But the reverse could also be true when you look at the reverse of it. Because if we interpret the statute where it only binds successor owners that purchased the whole, well then if the parcel's divided, does the village get to de-annex the property? Do we get to rezone the property as industrial or commercial or agricultural now? Do we have to stop providing potable water? Are our obligations now null and void too? I want to point out a couple similarities in the Yorkville case with that annexation agreement and the annexation agreement here. In the Yorkville case, and you'll find that in Section 22B of the annexation agreement in that case, and the provision that governs successors and assigns, that reads very similar and almost identical to the provision in the Kirkland case, Section 28I, binding and assigns. And when you compare those two, they're very similar. Now, Yorkville did contain in Section 9 of its agreement, a phrase in the section entitled Rights and Duties of the Developer, it did contain a provision that stated that the developer's responsibilities would secede to future developers of all or any part of the property. And from that, the Yorkville case did contain a provision that stated that the developer's responsibility would secede to future developers of all or any part of the property. And from that, the Yorkville court was able to imply that the drafters intended all successor owners, not just owners of the whole parcel. But as I mentioned earlier, the annexation in this agreement, the annexation agreement here also contemplates the same. In Section 5, as I previously mentioned, the properties to be developed in stages. Section 6, by distinguishing owner from landowner. And in Section 10, by yet again distinguishing property owners. I'm going to conclude by just touching briefly on the last issue, the attorney fee issue. And here in Illinois, attorney's fees can be awarded to somebody typically based on two things. One, if there's a statute that governs it that allows attorney's fees. Or two, by contract. Since there's no statute here that governs the award of attorney's fees, we're left with contract or the annexation agreement. Typically, to be entitled to attorney's fees under contract, you have to be a party to the contract. And here, the defendants were found by the trial court and have maintained that they're not parties to the contract. How then should they be awarded attorney's fees if they're not a party to the contract? It's clear here that the defendants want the benefits of the annexation agreement, but not the obligations. It is illogical and against all of the Illinois case law to suggest that a non-party to a contract can recover attorney's fees under that contract. The argument simply, it simply fails. Even assuming that the provision allows and says that non-parties can be awarded attorney's fees. The argument still fails due to the well-settled case law that you still have to be a party. Section 28J, the section, the defendant contends that they're allowed attorney's fees under, doesn't even state that non-parties are to be awarded attorney's fees. That section is entitled indemnify. It talks about when the parties to the annexation agreement have to indemnify each other and hold each other harmless. And at the very bottom, it says, in the event of any dispute, the prevailing argument is that the prevailing party is entitled to its attorney's fees and costs. The prevailing party, the indemnifying party, the parties to this contract. If then, the defendants aren't parties to the contract, the only possible way they could get attorney's fees is if they're a third-party beneficiary. And there's a strong presumption in Illinois against third-party beneficiaries. It has to be a practically an express declaration. There was no such declaration in this case. Counsel, you may bring your remarks to a close. Very good. I'll conclude unless any of the justices have any more questions. Thank you. Thank you again, Your Honors. May it please the Court. To address counsel's arguments, this annexation agreement was entered into by the defendants in this case, didn't purchase the property until 2017. So, no, there was no input by the defendants in this case in negotiating this contract whatsoever. And I do believe the record is, in fact, clear that this agreement was drafted entirely by the village without any input or negotiation from the original landowners. Second, with regards to what counsel is saying regarding they're only seeking a pro rata share from the defendants for these properties, he's also saying that somehow individual lot owners are somehow exempt. So, no, they're not seeking a pro rata share of the remaining improvements from these defendants because they're arbitrarily and unilaterally excluding a large segment of the current owners of this land. And that's one thing that the record is not clear on. But this is not a situation where one half of the subdivision is built and the other half is not. It's my understanding that it's a mixed and that there are some developments not improved, others not. And so to piecemeal say these owners are responsible for a pro rata share while these owners are not, again, it's an arbitrary distinction. When counsel says that what is the result of the original landowners' breach of this annexation agreement, does it mean de-annexation? Does it mean we get to leave? No. It was the expectation very clearly laid out, the expectation and the intent of the drafters that if there was a breach of this agreement by the developer, the village had the power and authority to exercise the letter of credit and become 100 percent made whole. Who knows why the village didn't do that, but that's not what's before this court today. The policy and the principles that the village is setting forth lead to the absurd result. Or lead to arbitrary distinctions that can't be made. And that's not what's before this court today. It's the absurd result that can't be made, that re-terms into this agreement that simply do not exist. The far more consistent, reliable, and best suited standard to ensure predictability and to avoid protracted litigation like the one before this court is the one implemented by the Doyle Court, the court in the United City of Yorkville, and the court in the city of Elgin, where it is left to the drafters of an annexation agreement to determine what classes of subsequent property owners can be considered successors. At the time the village drafted this annexation agreement, there was nothing stopping it from adding language that would make any subsequent owners liable for the original developer's contractual obligations. The village could have made the annexation agreement binding on subsequent owners of portions, but not all of the subject property. It did not. The village could have made the annexation be a covenant that runs with the whole of the property or any portion thereof. It did not. The village could have made the annexation agreement binding on each and every subsequent grantee, or on any particular class, as the agreement set forth in the city of Elgin and United City of Yorkville cases did. But in this case the village did not. The village could have made the annexation agreement binding on each subsequent owner who obtains title to all or any portion of the subject property with the express intent of developing the property, as opposed to a mere homeowner who is just buying the property to live in. It did not. The village could have made the annexation agreement binding on each subsequent owner who obtains title to more than one lot. It did not. The fact that the village did not include language identifying the classes of subsequent owners who would be owners is evidence that it did not intend anybody but the original owners or any subsequent owners of the entire property to be so bound. This is the standard imposed by the trial court in this case. It's the standard that was seemingly followed in city of Elgin and the United City of Yorkville, and also discussed in Doyle, and it's the standard that I implore this honorable court to impose in this case as well. Thank you. Thank you very much, counsel, both counsels. In this case, number, agenda number 14. Oh, I'm sorry. I'm done, Your Honor. I was just removing the thing. Thank you. Agenda number 14, number 128612, the Village of Kirkland v. Kirkland Properties Holdings Company, LLC, is taken under advisory. Thank you.